**Phillip Ryan MEYER, Appellant,**

v.

**Elizabeth THORNHILL, Respondent.**

**No. WD 47991.**

Missouri Court of Appeals,
Western District.

July 19, 1994.

Ernest Courtwright, Warrensburg, for appellant.

Peggy D. Richardson, Andereck, Evans, Milne, Peace & Baumhoer, Jefferson City, for respondent.

Before SMART, P.J., and KENNEDY and ULRICH, JJ.

ULRICH, Judge.

Phillip Ryan Meyer appeals the directed verdict entered against him in his suit against Elizabeth Thornhill alleging bodily injury and property damage emanating from a vehicular accident involving vehicles driven by the parties in Jefferson City on February 23, 1991. Mr. Meyer claims that the trial court erred in granting defendant Thornhill a directed verdict at the close of plaintiff's evidence because (1) the evidence established a prima facie case; (2) striking the testimony of accident witness Jana Taylor regarding the point of impact was improper; (3) sustaining defendant's objection to accident witness Jason Holtmeyer's testimony regarding the point of impact was improper; (4) statements of defense counsel in opening statement were erroneously rejected as admissions and, therefore, not considered by the court before granting the directed verdict; and (5) plaintiff's motion for a new trial was

denied even though plaintiff had presented a prima facie case of negligence.

The directed verdict is reversed, and the case is remanded for new trial.

On February 23, 1991, in Jefferson City, Phillip Meyer was driving a white pickup truck southbound on Stadium Boulevard. Elizabeth Thornhill exited the Wal–Mart Super Store driveway that intersects with Stadium Boulevard. She attempted to turn left onto Stadium Boulevard in order to travel northbound. The vehicle driven by Mr. Meyer collided with the vehicle driven by Ms. Thornhill at some point on Stadium Boulevard near the Wal–Mart Super Store driveway. Mr. Meyer was traveling at approximately 25 to 30 miles per hour before attempting to stop his vehicle to avoid the vehicle driven by Ms. Thornhill. The passenger-side tires of his truck rolled over the front right corner of Ms. Thornhill's vehicle. Most of the damage to Mr. Meyer's vehicle was to the underside of his truck.

A stop sign faced drivers exiting from the Wal–Mart Super Store driveway onto Stadium Boulevard. No traffic control sign or light faced southbound drivers on Stadium Boulevard at the intersection of the Wal–Mart Super Store driveway and Stadium Boulevard.

Jason Holtmeyer and Jana Taylor testified that they were at or near the scene of the accident when it occurred. Mr. Holtmeyer was standing near the accident scene at the time of impact. Ms. Taylor was a passenger in Mr. Meyer's vehicle when the accident occurred.

At the conclusion of plaintiff's evidence, Ms. Thornhill's motion for a directed verdict was granted. Mr. Meyer's subsequent motion for a new trial was denied.

### POINTS (1) AND (5) [1]

Mr. Meyer contends that the court erred in granting Ms. Thornhill's motion for a directed verdict at the close of plaintiff's evidence, contending in point one (1) that the evidence and reasonable inferences therefrom were sufficient basis by which a reasonable person could find Ms. Thornhill's negli-

gence caused Mr. Meyer damages. Mr. Meyer's point five (5) contends that the court erred in failing to grant a new trial because granting the directed verdict was error, plaintiff having presented a prima facie case. Both points are considered together.

A directed verdict is a drastic measure and is properly granted only where, with facts considered in a light most favorable to the non-moving party, reasonable minds could find only in favor of the moving party. *Donham v. Samo*, 838 S.W.2d 174, 175 (Mo.App. 1992); *Duvall v. Brenizer*, 818 S.W.2d 332, 335 (Mo.App.1991). Negligence is ordinarily a jury question, and where different conclusions may be supported by the facts, the question of negligence is almost always for the jury. *Samo*, 838 S.W.2d at 176. In determining whether plaintiff Meyer made a submissible case, all the evidence and inferences are viewed in the light most favorable to Mr. Meyer and any contrary evidence and contrary inferences are disregarded. *Samo*, 838 S.W.2d at 175. Each and every fact essential to liability must be predicated on legal and substantial evidence. *Brenizer*, 818 S.W.2d at 335. Plaintiff's evidence is presumed true; but missing evidence is not supplied; and unreasonable, speculative, or forced conclusions are not inferred. *Eidson v. Reproductive Health Servs.*, 863 S.W.2d 621, 626 (Mo.App.1993).

If a plaintiff makes a submissible case on any cause of action pleaded, a directed verdict is improper. *Porter v. Erickson Transp. Corp.*, 851 S.W.2d 725, 744 (Mo.App.1993). Mr. Meyer pleaded that Ms. Thornhill committed several negligent acts that caused him damage. He pleaded Ms. Thornhill failed to: yield the right-of-way; look carefully before entering a through street; properly make a left turn; and failed to act to avoid a collision once the threat of collision was or should have been reasonably apparent.

Missouri Approved Instructions include different definitions for failure to yield. The two that are potentially applicable are MAI 14.05 and MAI 14.06. MAI 14.05 applies to failure to yield when entering onto a street at a stop sign. When, however, a vehicle is

---

1. Because points (1) and (5) are dispositive, only these points are considered.

entering onto a thoroughfare from a private road MAI 14.06 is the proper instruction, but evidence must show the road from which the vehicle enters was a private road, alley or parking lot. *McDowell v. Mohn,* 426 S.W.2d 95, 97–98 (Mo.1968). "The phrase 'yield the right-of-way' ... means a driver entering the roadway from a private road is required to yield to another vehicle approaching on the highway." MAI 14.06 [1978 Revision]; § 304.351.5, RSMo 1986. The two situations are distinct. MAI 14.05, failure to yield at a stop sign or yield sign, includes the language, "if the other vehicle is within the intersection or is so close to the intersection that it is an immediate hazard." *See* § 304.351.4(1)(a). MAI 14.06, which is based on section 304.-351.5, RSMo 1986, intentionally does not include the "immediate hazard" language. *Karashin v. Haggard Hauling & Rigging, Inc.,* 653 S.W.2d 203, 206 (Mo. banc 1983). Mr. Meyer did not present evidence to establish whether the entry road from the Wal–Mart parking lot to the highway on which the accident occurred was a private road.[2]

■ To establish a prima facie case for failure to yield at a stop sign, Mr. Meyer needed to provide evidence from which the jury could reasonably conclude his vehicle was so close to the intersection that Ms. Thornhill's vehicle then entering the roadway presented an immediate hazard. This evidence can include, *inter alia,* the speed of plaintiff's vehicle, the location of the collision, or the distance a person stopped at the intersection could see in the direction of plaintiff's vehicle. Such evidence, together with evidence of the stop sign's location, the collision, and damages suffered, could be sufficient to avoid a directed verdict unless the evidence is so improbable that reasonable minds could only find in favor of the defendant. *See Samo,* 838 S.W.2d at 175.

■ A driver must be held to have seen what looking would reveal. *Goodloe v. Pink,* 683 S.W.2d 653, 655 (Mo.App.1984). In *Pink,* the plaintiff had no recollection of the collision due to the serious injuries he had

suffered, and his passengers were asleep at the time of the collision. The plaintiff had been driving southbound when the northbound defendant turned left in front of plaintiff's vehicle and collision of the two vehicles resulted. The investigating officer testified that the driver of a northbound vehicle, like the defendant in that case, would have had a full view of the southbound traffic for at least 80 feet south of the intersection. *Id.* The officer estimated plaintiff's speed at 55 miles per hour. *Id.* The Court in *Pink* concluded that the officer's testimony, together with 114 feet of skid marks, was substantial evidence that plaintiff's vehicle was so close to the intersection when the defendant turned left as to be an immediate hazard. *Id.*

■ In the case *sub judice,* Mr. Meyer entered into evidence without objection clear photos showing the site of the collision and the damage to Mr. Thornhill's vehicle. Mr. Meyer testified that he was traveling southbound at 25 to 30 miles per hour with his headlights on, he was looking down the hill in front of his vehicle, and he was not distracted. He testified that the speed limit at that location was 45 miles per hour, and he was not subject to any traffic control signs or lights. Evidence disclosed that a stop sign faced Ms. Thornhill. Mr. Meyer testified that he first saw Ms. Thornhill as "she was coming up into my lane," or as he testified at another point, "[defendant's car] was in my lane ... traveling north, up the hill." Mr. Meyer estimated that the light at the top of the hill was "less than half a football field" from the point of impact. Mr. Meyer showed on a photo exhibit the location of his truck when he first saw Ms. Thornhill "coming into [his] lane," although he did not mark the location on the exhibit. Mr. Meyer, through his own testimony, the testimony of other witnesses, and a photographic exhibit showing the damage to Ms. Thornhill's vehicle, presented sufficient evidence to allow the jury to determine the location of the vehicles and their positions when impact occurred. This evidence supported the explanation that

2. Mr. Meyer's counsel, in his opening argument stated it was a private road. No other mention of the road's status exists in the record. Mr. Meyer's attorney's opening argument is not legal and substantial evidence of the non-public status of the road. *State v. Hoelzer,* 493 S.W.2d 703, 706 (Mo.App.1973); MAI 2.01 [1978 Revision].

Mr. Meyer's truck, as it braked and "swerved" to his left, struck the front center of Ms. Thornhill's vehicle and rolled over the front right corner of the hood of the Thornhill vehicle.

The investigating officer, during his testimony, demonstrated how far a driver of a Ford Tempo, like the Thornhill vehicle, stopped at the stop sign facing traffic on the Wal–Mart Super Store driveway about to enter onto Stadium Boulevard, would be able to see an oncoming pickup truck if she looked up the hill to her left. The record did not preserve exactly where on the photographic exhibit the officer pointed. However, the record reflected that the officer did demonstrate to the jury what a driver seated in a Ford Tempo, stopped at the stop sign, located on the access road could have seen.

Mr. Meyer's passenger testified that Mr. Meyer was driving his truck southbound on Stadium Boulevard about 25 to 30 miles per hour when the accident occurred. She marked on a photographic exhibit where the collision occurred. Her testimony and her marks on the photograph showing the collision location were stricken from the record after a motion to strike was granted. The trial court's striking of the passenger's evidence is the subject of Mr. Meyer's point two on appeal. With the passenger's evidence, plaintiff would certainly have submitted a case sufficient for jury submission. Even without the passenger's evidence, the evidence presented was such that reasonable minds could differ on whether Ms. Thornhill failed to yield to Mr. Meyer's vehicle. If reasonable minds can draw different conclusion from the facts presented, causation questions are for the jury, and directed verdict is not proper. *Schaffer v. Bess,* 822 S.W.2d 871, 876 (Mo.App.1991).

Even had Mr. Meyer's evidence failed to present evidence sufficient to establish a case for jury submission for failure to yield, sufficient evidence was presented to submit the question of negligence to the jury on defendant's failure to keep a careful lookout,[3] failure to use the highest degree of care to avoid the collision once there was a reasonable

likelihood of collision,[4] or failure to properly make a left turn. Despite the possible lack of preparedness or clear presentation, sufficient evidence was presented to make a submissible case. The directed verdict was improper. Because the directed verdict was improper, the trial court should have granted Mr. Meyer's motion for a new trial. Points one (1) and five (5) are granted.

The judgment entering a directed verdict is reversed, and this matter is remanded for a new trial.

All concur.