**AMERICAN FAMILY MUTUAL INSURANCE CO.,**
Respondent,

v.

**Pamela C. COKE**

and

**Ward Ferrell, Appellants.**

No. ED 96759.

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 14, 2012.

---

Robert J. Wulff, St. Louis, MO, For Respondent.

Michael J. Fagras, St. Peters, MO, For Appellants.

SHERRI B. SULLIVAN, J.

*Introduction*

Pamela C. Coke (Coke) and Ward Ferrell (Ferrell) (collectively Appellants) appeal from the trial court's judgment granting American Family Mutual Insurance Co.'s (Respondent) Motion for Directed Verdict on Appellants' counterclaim for breach of contract and vexatious refusal to pay. We reverse and remand.

*Factual and Procedural Background*

On July 13, 2009, Respondent filed a petition for declaratory judgment against Appellants seeking adjudication of Respondent's rights and obligations under an insurance policy Respondent issued Appellants on a 2003 Monaco Motor Home (RV) which had been damaged following issuance of the policy. Appellants filed a counterclaim against Respondent for breach of contract, vexatious refusal to pay, and defamation. Appellants subsequently dismissed their defamation claim. The relevant evidence presented at trial, viewed in the light most favorable to Appellants, is as follows.

On February 29, 2008, Appellants purchased the RV from a seller in Sacramento, California. Coke testified the purchase price of the RV was $149,500 plus a trade-in of a Ford F450. The RV was titled in the name of, and therefore owned by, Toy Hon USA, a company owned by Ferrell. Coke took possession of the RV in California and drove it to Las Vegas, where she was met by Ferrell. In Las Vegas, Appellants spent approximately $1,000 repairing a fuel leak that developed in the RV and purchased a warranty for the RV for $6,000. After spending some time in Las Vegas, Appellants drove the RV to St. Louis. In February 2008, Appellants purchased an insurance policy on the RV from Respondent.

Prior to November 2008, Appellant took several trips in the RV, including trips to southern Missouri to fish, and to Chicago and Memphis. After purchasing the RV, Appellants decided to use it to live in while they built a house on some property they owned in Alabama. Appellants built a building to store the RV, which included installing two large doors at a cost of $4,000. Coke testified that Appellants spent $6,300 replacing the RV's tires.

In November 2008, Appellants drove the RV to their Alabama property, where they spent 5 to 6 days. While there, Appellants repaired a water leak in the RV. Appellants left Alabama and drove to Arizona where they stayed for 10 days visiting a sick friend and sightseeing. Ferrell then flew back to St. Louis while Coke decided to stay in Arizona for a while longer.

On November 25, 2008, Coke was staying at an RV park in Mesa, Arizona when she decided to drive the RV into the nearby mountains to spend the night. While driving, Coke became concerned about the RV's brakes and decided to turn around. On her way back to Mesa, Coke parked the RV on the shoulder of the highway and got out to check a hissing noise coming from the back of the RV. While walking next to the RV, the RV began to roll, eventually rolling down a ravine.

At the time of the accident, Appellants had an insurance policy in effect with Respondent for the RV which included both comprehensive and collision coverage. Appellants also insured at least four other vehicles and their home with Respondent. Appellants were the named insureds in the RV policy. Appellants made a claim to Respondent for the resulting damage to the RV. On the advice of their insurance agent, Appellants continued to pay premiums on the RV for 14 months after the accident. Respondent ultimately refused to pay the claim.

At the close of all the evidence, Respondent moved for a directed verdict on Appellants' counterclaim for breach of contract and vexatious refusal to pay on the grounds that Appellants were not the real parties in interest entitled to bring a cause of action for damages because the RV was not titled in their name. The trial court granted Respondent's Motion for Directed Verdict. This appeal follows.

## Point on Appeal

On appeal, Appellants argue the trial court erred in granting Respondent's Motion for Directed Verdict based on a finding that Appellants were not entitled to receive insurance proceeds for property damage caused by the accident because Appellants were not the titled owners of the RV, in that the evidence adduced at trial demonstrated that Appellants purchased the RV, used the RV, had a property interest in the RV and enjoyed all of the rights and privileges of vehicle ownership, and therefore, had an insurable interest in the RV which, pursuant to the insurance contract in effect on the date of the accident, required Respondent to pay for the property damage as a result of the accident.

## Standard of Review

On review of the trial court's grant or denial of a motion for directed verdict, this Court must determine whether the plaintiff made a submissible case. *Guidry v. Charter Commun., Inc.,* 269 S.W.3d 520, 527 (Mo.App. E.D.2008). "A defendant is entitled to have the motion granted only if the plaintiff fails to make a submissible case." *Blue v. Harrah's N. Kansas City, LLC,* 170 S.W.3d 466, 472 (Mo.App. W.D.2005). To make a submissible case, the plaintiff must present substantial evidence tending to prove the facts essential to his recovery. *Id.* "'Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case.'" *Id.,* quoting *Porter v. Toys "R" Us–Del., Inc.,* 152 S.W.3d 310, 315 (Mo.App.W.D.2004).

We view the evidence and all reasonable inferences therefor in the light most favorable to the plaintiff and disregard all evidence to the contrary. *Blue,* 170 S.W.3d at 472. "Whether evidence in a case is substantial and whether inferences drawn are reasonable are questions of law." *Kiesel Co. v. J & B Properties, Inc.,* 241 S.W.3d 868, 871 (Mo.App. E.D. 2008). Questions of law are reviewed *de novo. Guidry,* 269 S.W.3d at 527.

## Discussion

"Generally, title is not a prerequisite to the enforcement of an insurance contract for loss." *Dimmitt v. Progressive Cas. Ins. Co.,* 92 S.W.3d 789, 792 (Mo. banc 2003). Instead, in order to enforce an insurance contract, the insured must have an insurable interest in the property both at the time the contract is made and at the time the loss is sustained. *Id.* at 791; *DeWitt v. Am. Family Mut. Ins. Co.,* 667 S.W.2d 700, 704 (Mo. banc 1984). "'The requirement of insurable interest is necessary to prevent wagering under the guise of insurance and temptation to destroy the insured property.'" *Dimmitt,* 92 S.W.3d at 791, quoting *DeWitt,* 667 S.W.2d at 704. In the case *sub judice,* the primary issue on appeal is whether Appellants had an insurable interest in the RV such that they may enforce the insurance contract they purchased from Respondent.

"A person has an insurable interest in property if she will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against." *DeWitt,* 667 S.W.2d at 705. "An insurable interest may be 'entirely disconnected from any title, lien, or possession', and may derive solely 'from possession, enjoyment, or profits of the property,' as well as 'other certain benefits growing out of or dependent upon it.'" *Dimmitt,* 92 S.W.3d at 792, quoting *DeWitt,* 667 S.W.2d at 705. Missouri strongly favors finding an insurable interest and courts should "make every effort to find an

insurable interest, and to sustain coverage, when there is any substantial possibility that the insured will suffer loss from the destruction of the property." *Dimmitt*, 92 S.W.3d at 792.

Here, Appellants presented substantial evidence supporting a finding that they had an insurable interest in the RV both when making the contract and when the loss was sustained. Appellants presented evidence that they, not Toy Hon USA, paid $149,500 cash toward the purchase of the RV, thus resulting in a clear pecuniary loss resulting from the RV's damage. Appellants presented evidence of additional pecuniary loss in that they spent more than $13,000 maintaining, repairing, and purchasing a warranty for the RV in the months after its purchase and an additional $4,000 to modify a building to store the vehicle on their property. Furthermore, there was evidence that Appellants possessed the RV and utilized it for their personal enjoyment, which can also support a finding of an insurable interest.

Based on the foregoing, we find that Appellants presented substantial evidence supporting a finding that they had an insurable interest in the RV, thus making a submissible case on their counterclaim. The trial court erred in granting Respondent's motion for directed verdict based on a finding that Appellants' lack of title alone was sufficient to bar recovery.

Respondent attempts to distinguish the general law and those cases stating that title is not a prerequisite to the enforcement of an insurance contract for loss based on distinctions between real and personal property. Specifically, Respondent argues that Section 301.210 [1] requires the registration of motor vehicles and that *Puritan Ins. Co. v. Yarber*, 723 S.W.2d 98, 100 (Mo.App. E.D.1987) provides that any person who does not comply with the strict registration requirements of Section 301.210 has no insurable interest in a motor vehicle.

The Missouri Supreme Court explicitly rejected a line of cases utilizing this reasoning in *Dimmitt*, 92 S.W.3d at 792–93. In *Dimmitt*, the court found that while strict adherence to Section 301.210 is necessary to prevent fraud and deceit in the sale of motor vehicles, the legislature did not preclude a good faith buyer who fails to comply with the registration requirements from obtaining an insurable interest. *Id.* at 792–93. The Court held that requiring compliance with Section 301.210 to establish an insurable interest is contrary to the prevailing law and that a party's lack of compliance does not extinguish a person's capacity to suffer real and actual loss. *Id.* at 793. Similar to *Dimmitt*, this case "is about a person's right to collect insurance coverage for an actual loss after the good faith payment of premiums." *Id.* at 793.

As such, Appellants' lack of title does not preclude a finding that they had an insurable interest in the RV and could maintain an action to enforce the insurance contract they purchased from Respondent.[2]

### Conclusion

The trial court's judgment is reversed, and the cause is remanded for further

---

1. RSMo 2006.

2. Appellants' motion to file a supplemental legal file with regard to Exhibit C is denied as the exhibit was not admitted into evidence at trial. *McCormick v. Cupp,* 106 S.W.3d 563, 569 (Mo.App. W.D.2003) (exhibits not introduced into evidence are not part of the record and normally cannot be considered on review).

proceedings in accordance with this opinion.

ROBERT G. DOWD, JR., P.J., and MARY K. HOFF, J., concur.